No. 26-226

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

---

**VEM MILLER,**
Plaintiff-Appellant,

v.

**CHAD BIANCO, in his individual and official capacity as Sheriff of Riverside County; COUNTY OF RIVERSIDE,**
Defendants-Appellees.

---

On Appeal from the United States District Court
for the Central District of California
Case No. 5:25-cv-00629-KK (DTB)
The Honorable Kenly Kiya Kato, United States District Judge

---

# APPELLANT'S REPLY BRIEF

---

**ETHAN BEARMAN, ESQ. (SBN 327490)**
**THE BEARMAN FIRM, INC.**
9460 Wilshire Blvd., Suite 830
Beverly Hills, CA 90212
(747) 232-7626
ethan@thebearmanfirm.com

*Attorney for Plaintiff-Appellant Vem Miller*

# TABLE OF CONTENTS

***INTRODUCTION*** ........................................ ***1***

***ARGUMENT*** ........................................ ***2***

**I. THE DISTRICT COURT RESOLVED PROBABLE CAUSE FOR THE ARREST AND NOTHING ELSE; THE SAC PLEADS CLAIMS THAT PROBABLE CAUSE DOES NOT REACH** ........................................ **2**

**A. The question is preserved, and review is de novo.** ........................................ 2

**B. *Gant* authorizes a search for evidence of the offense of arrest. The SAC pleads a search for evidence of something else, and the order never asked what justified it.** ........................................ 3

**C. The *Gant* rationale cannot reach the pleaded examination of electronic devices.** ........................................ 5

**D. Duration is measured against the mission.** ........................................ 5

**E. The SAC pleads two custodial phases, and the order declined to consider either.** ........................................ 6

**II. THE ORDER RECITED LACEY AND APPLIED GREEN, A CASE NO PARTY CITED** ........................................ **8**

**III. NIEVES WAS THE FRAMEWORK BELOW, AND APPELLEES CANNOT DISCLAIM IT NOW** ........................................ **11**

**IV. THE MONELL DISMISSAL IS DERIVATIVE, AND THE ALTERNATIVE THEORIES WERE NEVER REACHED** ........................................ **12**

**V. FAILURE TO INTERVENE** ........................................ **14**

**VI. BAIRD IS PRESERVED; PREISER IS INAPPOSITE; AND THERE IS NO CONVICTION** ........................................ **15**

**VII. THE DENIAL OF LEAVE TO AMEND RESTED ON A RULE RATHER THAN A FINDING, MILLER FOLLOWED THE COURT'S**

**INSTRUCTIONS, AND HE CAN NOW SAY WHAT HE WOULD PLEAD 16**

**A. The holding as written.** ........ 16

**B. Miller followed the district court's instructions.** ........ 17

**C. Futility cannot reach what the court declined to examine.** ........ 19

**D. Miller can now state what a Third Amended Complaint would allege.** ........ 20

**VIII. QUALIFIED IMMUNITY IS NOT BEFORE THIS COURT ........ 21**

***CONCLUSION ........ 22***

# TABLE OF AUTHORITIES

## Cases

*Alvarez v. Hill*,
518 F.3d 1152 (9th Cir. 2008) ........ 7

*Arizona v. Gant*,
556 U.S. 332 (2009) ........ 3, 4, 5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 4, 10

*Baird v. Bonta*,
163 F.4th 723 (9th Cir. 2026) ........ 16

*Ballentine v. Tucker*,
28 F.4th 54 (9th Cir. 2022) ........ 12

*Barke v. Banks*,
25 F.4th 714 (9th Cir. 2022) ........ 20

*Bell v. Wolfish*,
441 U.S. 520 (1979) ........ 8

*Berk v. Choy*,
607 U.S. 187 (2026) ........ 19

*Blankenhorn v. City of Orange*,
485 F.3d 463 (9th Cir. 2007) ........ 14

*Brewster v. Shasta County*,
275 F.3d 803 (9th Cir. 2001) ........ 13

*Butler v. National Community Renaissance of California*,
766 F.3d 1191 (9th Cir. 2014) ........ 21

*Capp v. County of San Diego*,
940 F.3d 1046 (9th Cir. 2019) ........ 11, 12

*City of Canton v. Harris*,
489 U.S. 378 (1989) .......................................................................................14

*Community House, Inc. v. City of Boise*,
490 F.3d 1041 (9th Cir. 2007).............................................................................2

*Cousins v. Lockyer*,
568 F.3d 1063 (9th Cir. 2009)...............................................................................2

*Crowley v. Bannister*,
734 F.3d 967 (9th Cir. 2013)...............................................................................14

*D'Braunstein v. California Highway Patrol*,
131 F.4th 764 (9th Cir. 2025)...........................................................................7, 8

*Destfino v. Reiswig*,
630 F.3d 952 (9th Cir. 2011)...........................................................................17, 18

*Duarte v. City of Stockton*,
60 F.4th 566 (9th Cir. 2023)...............................................................................16

*Eminence Capital, LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003).............................................................................19

*Florida v. Royer*,
460 U.S. 491 (1983) .........................................................................................6

*Fontana v. Haskin*,
262 F.3d 871 (9th Cir. 2001)...............................................................................7

*G.B. ex rel. G.P. v. EPA*,
172 F.4th 1042 (9th Cir. 2026)...........................................................................20

*Gibson v. City of Portland*,
165 F.4th 1265 (9th Cir. 2026)...................................................................8, 18, 19

*Gillespie v. Civiletti*,
629 F.2d 637 (9th Cir. 1980)...............................................................................14

*Gordon v. County of Orange*,
888 F.3d 1118 (9th Cir. 2018) ........ 8

*Green v. Miss U.S. of Am., LLC*,
52 F.4th 773 (9th Cir. 2022) ........ 9

*Harding v. Galceran*,
889 F.2d 906 (9th Cir. 1989) ........ 21

*Heck v. Humphrey*,
512 U.S. 477 (1994) ........ 15

*Hollamon v. City of Los Angeles*, 709 F. Supp. 3d 992 (C.D. Cal. 2023) ........ 16

*Johnson v. City of Shelby*,
574 U.S. 10 (2014) ........ 7

*Kingsley v. Hendrickson*,
576 U.S. 389 (2015) ........ 8

*Lacey v. Maricopa County*,
693 F.3d 896 (9th Cir. 2012) ........ 9

*Larez v. City of Los Angeles,*
946 F.2d 630 (9th Cir. 1991) ........ 13

*Lockett v. County of Los Angeles*,
977 F.3d 737 (9th Cir. 2020) ........ 21

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) ........ 19

*Mendocino Envtl. Ctr. v. Mendocino County*,
192 F.3d 1283 (9th Cir. 1999) ........ 9

*Merritt v. County of Los Angeles*,
875 F.2d 765 (9th Cir. 1989) ........ 21

*Nieves v. Bartlett*,
587 U.S. 391 (2019) ........ 11, 12

*Pembaur v. City of Cincinnati*,
475 U.S. 469 (1986) ......13

*Preiser v. Rodriguez*,
411 U.S. 475 (1973) ......15

*Reed v. Lieurance*,
863 F.3d 1196 (9th Cir. 2017) ......10

*Riley v. California*,
573 U.S. 373 (2014) ......5

*Roberts v. City of Fairbanks*,
947 F.3d 1191 (9th Cir. 2020) ......16

*Rodriguez v. United States*,
575 U.S. 348 (2015) ......6

*Sanderlin v. Dwyer*,
116 F.4th 905 (9th Cir. 2024) ......12

*Seismic Reservoir 2020, Inc. v. Paulsson*,
785 F.3d 330 (9th Cir. 2015) ......10

*Telesaurus VPC, LLC v. Power*,
623 F.3d 998 (9th Cir. 2010) ......17

*Thompson v. Clark*,
596 U.S. 36 (2022) ......16

*Torres v. City of Santa Ana*,
108 F.3d 224 (9th Cir. 1997) ......21

*United States v. Camou*,
773 F.3d 932 (9th Cir. 2014) ......4

*United States v. Ross*,
456 U.S. 798 (1982) ......4

*Wakefield v. Thompson*,
177 F.3d 1160 (9th Cir. 1999) .......... 14

*Wallace v. Kato*,
549 U.S. 384 (2007) .......... 16

*Wong v. Bell*,
642 F.2d 359 (9th Cir. 1981) .......... 10

**Statutes**

Cal. Code Civ. Proc. § 474 .......... 21

Cal. Gov't Code § 945.3 .......... 20

Cal. Penal Code § 1001.95 .......... 20

Cal. Penal Code § 851.5 .......... 6, 8

Cal. Penal Code § 851.91 .......... 20

Cal. Penal Code § 851.92(b)(5) .......... 20

## INTRODUCTION

Appellees describe the order under review as “thorough and well-reasoned.” Answering Brief (“AB”) 14. It is ten pages. Its Fourth Amendment analysis is one paragraph: it quotes *Arizona v. Gant*, finds probable cause from four seconds of an audio recording, and never cites SAC ¶ 62, the paragraph that describes the search. ER-253 to 254. Its First Amendment analysis dismisses the claim under *Green v. Miss United States of America, LLC*, a compelled-speech case about a beauty pageant that no party cited and that contains no retaliation holding. ER-255. Its *Monell* and failure-to-intervene rulings are one sentence each, and both are derivative. ER-256. Its denial of leave to amend is three sentences, the first of which states a rule rather than a finding: “because Plaintiff already had an opportunity to amend, further opportunity to amend would be futile.” ER-257.[1]

The Answering Brief defends a different order. The record shows otherwise. The SAC pleads, as events rather than labels, what the deputies did after both disclosed firearms were in hand: “[e]lectronic device examination without warrant,” “[p]ersonal effects inventory unrelated to weapons,” “[b]omb-detection canine deployment,” “[c]hemical swab testing,” and a search “extending approximately 80 minutes beyond firearm retrieval.” ER-94. *Gant* authorizes a search for evidence of the offense of arrest; it does not authorize any of that, and the district court never asked whether it did. The SAC pleads a due process claim in four lettered subparagraphs, ER-95 to 96; Appellees tell this Court there is one. And Miller

[1]Appellees’ citations to the excerpts of record appear to reference the PDF pagination of the excerpts rather than the page numbers required by Circuit Rule 30-1.6; each is two pages higher than the corresponding ER page. Miller cites ER pages throughout and has converted Appellees’ citations accordingly.

followed the district court's instructions, four of five, which is why *Destfino v. Reiswig*, Appellees' lead case on amendment, describes a different plaintiff.

Miller does not ask this Court to decide the merits of his claims. He asks it to hold that a Rule 12 dismissal must address the claims that were pleaded, that a futility finding must identify something incurable, and that neither happened here. The judgment should be vacated and the case remanded with leave to amend.

## ARGUMENT

### I. THE DISTRICT COURT RESOLVED PROBABLE CAUSE FOR THE ARREST AND NOTHING ELSE; THE SAC PLEADS CLAIMS THAT PROBABLE CAUSE DOES NOT REACH

#### A. The question is preserved, and review is de novo.

Appellees spend four pages on waiver and then concede the point that matters. The district court, they acknowledge, "proceeded to address this cause of action 'on the merits,'" and "[i]t is not necessary for this Court to resolve that distinction." AB 17. An issue generally is not waived on appeal when the district court actually considered and resolved it, even if the party failed to raise it below. *Community House, Inc. v. City of Boise*, 490 F.3d 1041, 1054 (9th Cir. 2007). This Court reviews a Rule 12(b)(6) dismissal de novo, accepting the complaint's material factual allegations as true and construing them in the plaintiff's favor. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). What Miller argues here is that the analysis the district court performed does not reach the claim the SAC pleads. That is a challenge to the ruling, not a new theory.

### B. *Gant* authorizes a search for evidence of the offense of arrest. The SAC pleads a search for evidence of something else, and the order never asked what justified it.

The district court quoted *Gant*'s holding: "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." ER-253 (quoting *Arizona v. Gant*, 556 U.S. 332, 351 (2009)). It then concluded that "the RCSD Deputies' search incident to Plaintiff's arrest was lawful as it was reasonable to believe the vehicle contained evidence of Plaintiff's possession of a loaded firearm in violation of Section 25850(a)." ER-254. That is the entire Fourth Amendment holding. The order does not cite ¶ 62, ¶ 63, or ¶ 64 of the SAC. Appellees do not cite *Gant* at all.

*Gant* carries its own limit. The search-incident exception "ensures that the scope of a search incident to arrest is commensurate with its purposes of protecting arresting officers and safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy." 556 U.S. at 339. "In many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence." *Id.* at 343. The offense of arrest here was carrying a loaded firearm. The SAC pleads that Miller told the deputies where the firearms were ("I have a shotgun and I have a handgun. It's all in the back right there"), ER-94 (¶ 62(b)), that both were retrieved, and that the deputies then conducted a "comprehensive vehicle search including: i. Electronic device examination without warrant[;] ii. Personal effects inventory unrelated to weapons[;] iii. Bomb-detection canine deployment absent articulable suspicion[;] iv. Chemical swab testing without probable cause[;] v. Duration extending approximately 80 minutes beyond firearm retrieval." ER-94 (¶ 62(c)). Paragraph 63 adds "specialized

units including bomb-detection assets absent any articulable suspicion of explosive devices." ER-95.

These are not "labels and conclusions." AB 21 to 22. A canine sweep is an event. A chemical swab is an event. An inventory of personal effects is an event. *Iqbal* instructs a court to "assume [the] veracity" of well-pleaded factual allegations "and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Appellees quarrel with ¶ 61(a) and ¶ 63(a), AB 21, and say nothing about the five sub-bullets of ¶ 62(c). Neither does the order.

On those facts, *Gant* does not do the work the order assigned it. Miller does not contend that a search incident to arrest must stop at the moment the first item of evidence is found; *Gant* permits officers to look for evidence of the offense of arrest in "the passenger compartment of an arrestee's vehicle and any containers therein." 556 U.S. at 344. The point is what the deputies were looking for. A bomb-detection canine does not detect loaded firearms. A chemical swab does not detect loaded firearms. An inventory of personal effects "unrelated to weapons" is, by the SAC's terms, unrelated to the offense of arrest. Those are searches for evidence of a different offense, and a different exception governs them. *Gant* preserves the automobile exception for exactly that situation, but it requires "probable cause to believe a vehicle contains evidence of criminal activity." 556 U.S. at 347 (citing *United States v. Ross*, 456 U.S. 798, 820–21 (1982)). The SAC pleads that no such probable cause existed, ER-95 (¶ 64(a)); the order makes no finding that it did; and Appellees do not argue the automobile exception at all. The district court found probable cause for one offense and treated it as authority to search for any.

This Court has declined to let the vehicle exception expand to fit a search it was never meant to authorize, holding in *United States v. Camou*, 773 F.3d 932, 942–43 (9th Cir. 2014), that a cell phone found in a vehicle is not a "container"

within the automobile exception. The same discipline applies here. Each pleaded technique must be justified by the exception that fits it, and the order applied one exception, for one offense, to all of them. Whether the deputies had probable cause to search for explosives is a question for a court that asks it; this one did not.

### C. The *Gant* rationale cannot reach the pleaded examination of electronic devices.

One pleaded event deserves separate mention because the Supreme Court has already addressed it. SAC ¶ 62(c)(i) pleads "[e]lectronic device examination without warrant." ER-94. In *Riley v. California*, the Court considered whether the *Gant* standard should govern searches of digital devices incident to arrest and rejected it: "a *Gant* standard would prove no practical limit at all," because applying it "would in effect give 'police officers unbridled discretion to rummage at will among a person's private effects.'" 573 U.S. 373, 399 (2014) (quoting *Gant*, 556 U.S. at 345). "Our answer to the question of what police must do before searching a cell phone seized incident to an arrest is accordingly simple—get a warrant." *Id.* at 403. *Riley* preserves case-specific exceptions, but "the exigent circumstances exception requires a court to examine whether an emergency justified a warrantless search in each particular case." *Id.* at 402. The district court undertook no such examination. Whatever the device examination pleaded in ¶ 62(c)(i) turns out to have been, the one thing it could not have been is a search incident to arrest for evidence of a loaded-firearm offense.

### D. Duration is measured against the mission.

Appellees do not mention *Rodriguez v. United States* or *Florida v. Royer*. The rule they state is modest and settled: a detention's "tolerable duration" is "determined by the seizure's 'mission,'" and "[a]uthority for the seizure thus ends

when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Rodriguez*, 575 U.S. 348, 354 (2015); see *Royer*, 460 U.S. 491, 500 (1983) (plurality opinion) (an investigative detention "must be temporary and last no longer than is necessary to effectuate the purpose of the stop"). Miller does not contend that probable cause for the arrest was lacking once he told the deputies the handgun was loaded, and the SAC's allegations about the first minutes of the encounter are not what this appeal turns on. The point is narrower. The SAC pleads a sequence: disclosure, retrieval of both firearms, and then roughly eighty minutes more. ER-94. The order measured none of it. It found probable cause to arrest and stopped.

### E. The SAC pleads two custodial phases, and the order declined to consider either.

Appellees tell this Court that "[t]he sole reference to the Fourteenth Amendment relates to [Miller's] allegation that he was not allowed to make a phone call as required by California Penal Code § 851.5." AB 19 to 20. That statement is contradicted by the page they cite. Paragraph 65 of the SAC, in the First Cause of Action, reads in full:

> 65. Beyond Fourth Amendment violations, Defendants deprived Plaintiff of liberty without due process through: a. Prolonged Detention Without Charge: 95-minute pre-arrest detention exceeded permissible investigative parameters; b. Denial of Medical Attention: Deliberate indifference to documented pre-diabetic symptoms during extreme heat exposure; c. Coercive Conditions: Detention in patrol vehicle exceeding 110 degrees Fahrenheit constitutes punishment without adjudication; d. Communication Deprivation: Systematic denial of statutory phone call rights under Cal. Penal Code § 851.5.

ER-95 to 96. Four subparagraphs, under a due-process heading, inside a cause of action captioned "Fourth and Fourteenth Amendment Violations." ER-93. Paragraph 71 adds "prolonged exposure to temperatures exceeding 110 degrees

Fahrenheit," repeated denial of "pre-diabetic supplements," and repeated denial of "access to bathroom facilities." ER-97. Paragraph 70 pleads the § 851.5 denial as "a standalone constitutional violation, irrespective of probable cause." ER-96 to 97.

The district court did not analyze any of this. It said: "To the extent Plaintiff seeks to allege additional claims beyond unlawful search and seizure in Cause of Action One, as the Court previously warned in dismissing Plaintiff's deficient FAC, the Court 'will not attempt to cobble together alleged facts to support an unidentified cause of action.' . . . Accordingly, the Court declines to consider Plaintiff's unidentified claims." ER-254 n.2. Paragraph 65 identifies the claim by constitutional provision ("without due process"), by theory ("[d]eliberate indifference"; "punishment without adjudication"), and by fact. It was not unidentified. It was unaddressed. And a label is not what Rule 8 requires. The Federal Rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," and a plaintiff who has "informed the [defendant] of the factual basis for [his] complaint" is "required to do no more to stave off threshold dismissal." *Johnson v. City of Shelby*, 574 U.S. 10, 11–12 (2014) (per curiam). In *Fontana*, this Court rejected a narrow construction of the complaint, holding that factual allegations incorporated into the first cause of action sufficiently alleged a § 1983 claim distinct from false arrest. *Fontana v. Haskin*, 262 F.3d 871, 876–77 (9th Cir. 2001); see *Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008) (a complaint "need not identify the statutory or constitutional source of the claim raised").

Appellees' own authority confirms that it belonged exactly where Miller put it. They cite *D'Braunstein v. California Highway Patrol*, 131 F.4th 764, 769 (9th Cir. 2025), for the proposition that "claims for the failure to provide medical care during the course of an arrest should be analyzed under the Fourth Amendment." AB 20. So they should. *D'Braunstein* says that "for persons who are detained by police in the course of an arrest, the Fourth Amendment's prohibition on the use of

excessive force protects against the deprivation of necessary medical care." 131 F.4th at 769. If that is the governing framework for the first phase of Miller's custody, the roadside and the patrol vehicle, then ¶ 65(b) and (c) pleaded a Fourth Amendment claim inside a Fourth Amendment count, and footnote 2's premise, that the claim was "unidentified," fails on Appellees' own reading. Their *Graham v. Connor* parenthetical, AB 20, describes what the district court did not do: identify the right and apply its standard.

The second phase, the Thermal station and the John Benoit Detention Center, is governed by the Fourteenth Amendment. A detainee "may not be punished prior to an adjudication of guilt," and a restriction "not reasonably related to a legitimate goal—if it is arbitrary or purposeless" permits the inference of punishment. *Bell v. Wolfish*, 441 U.S. 520, 535, 539 (1979). The standard is objective. *Kingsley v. Hendrickson*, 576 U.S. 389, 395 (2015); *Gordon v. County of Orange*, 888 F.3d 1118, 1124–25 (9th Cir. 2018). *D'Braunstein* itself observes that under both Amendments "the standards both turn on objective reasonableness." 131 F.4th at 769. The non-consensual x-ray and the § 851.5 denial are pleaded with specificity. ER-96 to 97 (¶ 70); ER-103 to 104 (¶ 90(c)). Appellees' response, that the SAC "does not satisfy Rule 8 for these very reasons," cites *Gibson v. City of Portland*, 165 F.4th 1265, 1293 (9th Cir. 2026), AB 21, a page that concerns *Monell* pleading in a case with no medical-care or conditions claim of any kind. Whichever Amendment governs each phase, the claims were pleaded and neither was analyzed. That is reversible under either framework.

## II. THE ORDER RECITED LACEY AND APPLIED GREEN, A CASE NO PARTY CITED

Appellees say the district court "correctly articulated the standard" under *Lacey v. Maricopa County*. AB 29. It did recite it. ER-255. What it then applied was

something else. The order quoted a sentence from Miller's opposition brief, treated the sentence as a concession of the retaliatory motive, and held that "the desire to 'maximize the story's shock value' does not constitute 'retaliatory animus' under the First Amendment, given the fundamental value of First Amendment jurisprudence 'is the protection against the chilling of lawful speech.'" ER-255 (quoting *Green v. Miss U.S. of Am., LLC*, 52 F.4th 773, 799 (9th Cir. 2022)). That is a single-motive test. The question under *Lacey* and *Mendocino* is whether deterrence of the plaintiff's speech "was a substantial or motivating factor in [the defendant's] conduct," *Lacey*, 693 F.3d 896, 916 (9th Cir. 2012) (en banc) (quoting *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir. 1999)), and intent to inhibit speech "can be demonstrated either through direct or circumstantial evidence," *Mendocino*, 192 F.3d at 1301. The order never asked whether chilling Miller's speech was a motivating factor. It asked whether "shock value" is animus and answered no.

*Green* cannot carry that holding. *Green* affirmed summary judgment for a beauty pageant on the ground that applying Oregon's public accommodations law to its eligibility rule would compel speech. 52 F.4th at 777, 803. The sentence the district court quoted comes from the majority's response to a dissent on constitutional avoidance, and it reads in full: "A fundamental value of our First Amendment jurisprudence is the protection against the chilling of lawful speech." *Id.* at 799. The opinion contains no retaliation claim and no discussion of retaliatory animus. Appellees' answer to this point is that it is "without merit." AB 31. They do not say why.

Nor do they deny the procedural point. Miller's opening brief showed that *Green* appears nowhere in Appellees' motion to dismiss, their reply, the opposition, or the order dismissing the FAC. Opening Brief ("OB") 18. The Answering Brief does not contest it. The problem is not that the court cited a case the parties had not.

It is that the court decided the motion on a ground Miller never had an opportunity to meet: that a motive to "maximize the story's shock value" is categorically not retaliatory animus, so that the circumstantial allegations of ¶ 81 need not be examined. Appellees' motion argued that the SAC failed to plead a causal connection. The argument that the pleaded motive is "outside the scope of the First Amendment's proscription" appeared for the first time in Appellees' reply, ER-232 to 233, after Miller's opposition was filed, and the order adopted it with a citation of its own. A district court may not dismiss on a ground the plaintiff has had no notice of and no opportunity to address. *Reed v. Lieurance*, 863 F.3d 1196, 1207 (9th Cir. 2017); *Seismic Reservoir 2020, Inc. v. Paulsson*, 785 F.3d 330, 336 (9th Cir. 2015); *Wong v. Bell*, 642 F.2d 359, 361–62 (9th Cir. 1981). Miller had neither.

What the order did not analyze is the pleading. Paragraph 81 pleads five categories of circumstantial evidence of causation: temporal proximity, content focus on Miller's "Trump support and conservative political identity," absence of legitimate purpose in light of "federal authorities' explicit refusal to investigate," political animus tied to the Sheriff's "February 2025 gubernatorial campaign announcement," and conscious falsity. ER-100. Paragraph 8 pleads that by the morning of October 13, 2024, the Sheriff knew the FBI and Secret Service had declined to treat Miller as a threat. ER-76. Paragraph 11 pleads the raid on Miller's family the next day. ER-76 to 77. The order mentions none of them. Appellees respond to them on the merits, AB 25 to 29. Those are arguments for a district court applying the right standard to the right paragraphs. They are not a defense of an order that applied a different standard to a sentence from a brief. Appellees say the court "can hardly be faulted for assuming Miller understood and accurately described his complaint." AB 30. Under Rule 12(b)(6) the object of review is the complaint, not counsel's description of it, and a court that credits well-pleaded facts "should assume their veracity." *Iqbal*, 556 U.S. at 679.

Appellees' remaining argument is that Miller "conflates" defamation with retaliation. AB 23 to 24. The SAC does not plead that false statements are a constitutional tort, and it does not plead the statements in isolation. It pleads a course of official conduct directed at a political journalist and campaign organizer: an arrest at a political event, the search of his vehicle and devices pleaded in ¶ 62, a raid on his family the following day, and then, with the FBI and Secret Service having declined to treat him as a threat, a months-long campaign in which the county's chief law enforcement officer repeatedly branded him a would-be presidential assassin on national television, timed to the Sheriff's own gubernatorial campaign. ER-76 to 77 (¶¶ 8, 11); ER-98 to 100 (¶¶ 77 to 82). The pleaded consequence is that Miller's journalism, his event attendance, and his organizing ended. ER-99 to 100. The question is whether that course of conduct, taken as a whole, would chill a person of ordinary firmness and was motivated by Miller's protected activity. *Capp v. County of San Diego*, 940 F.3d 1046, 1053–56 (9th Cir. 2019). Whether the SAC states such a claim is a question the district court was required to answer under *Lacey*. It did not.

## III. NIEVES WAS THE FRAMEWORK BELOW, AND APPELLEES CANNOT DISCLAIM IT NOW

Appellees are correct that the January 5, 2026 order does not cite *Nieves v. Bartlett* by name. AB 31 to 32. That is not the point. The order dismissing the FAC applied *Nieves*'s probable-cause bar across four pages, holding that "to prevail on a retaliatory arrest claim under the First Amendment, the plaintiff 'must plead and prove the absence of probable cause of the arrest'" and that Miller failed because "the facts actually demonstrate probable cause." ER-67 (quoting *Nieves*, 587 U.S. 391, 402 (2019)); see ER-66 to 69. Appellees' own motion to dismiss the SAC urged the same bar. ER-150. And the January order expressly incorporates the August order's probable-cause holding. ER-254 ("As this Court ruled in its August 14, 2025

Order . . . .”). Miller’s opening brief addressed the reasoning the district court actually used across both orders.

If Appellees now disclaim *Nieves*, the consequence is theirs. The *Nieves* bar is specific to retaliatory arrest claims, *id.* at 401–02, and the adverse action pleaded in the Second Cause of Action is not the arrest but the campaign that followed it. ER-98 to 99 (¶ 78). This Court has confined *Nieves* to the arrest itself and declined to extend its probable-cause requirement to other retaliatory conduct. *Capp*, 940 F.3d at 1056; *Sanderlin v. Dwyer*, 116 F.4th 905, 913– 14 (9th Cir. 2024). Absent the bar, the claim is governed by *Ballentine v. Tucker*, 28 F.4th 54, 61 (9th Cir. 2022): protected activity, adverse action that would chill a person of ordinary firmness, and a substantial causal relationship. The SAC pleads each. ER-98 to 100 (¶¶ 77 to 82). And under *Capp*, a legitimate purpose for the conduct does not require dismissal where the complaint plausibly alleges that retaliatory animus was a but-for cause of it. 940 F.3d at 1056.

## IV. THE MONELL DISMISSAL IS DERIVATIVE, AND THE ALTERNATIVE THEORIES WERE NEVER REACHED

The district court’s entire *Monell* holding is one sentence: Miller “fails to state a claim for failure to train under *Monell* because, for the reasons stated above, Plaintiff fails to allege any underlying violation of his constitutional rights.” ER-256. Appellees agree that this was the ground. AB 36. If any predicate claim is reinstated, the stated basis for the *Monell* dismissal disappears.

Everything else in Appellees’ *Monell* section, AB 37 to 44, is an alternative ground the district court never reached. This Court is not obliged to resolve in the first instance fact-bound questions of policymaker status, ratification, and training that the district court did not analyze. First, Appellees do not engage *Pembaur v. City of Cincinnati* on policymaker status, which holds that “municipal liability may

be imposed for a single decision by municipal policymakers under appropriate circumstances." 475 U.S. 469, 480–81 (1986). Miller's theory is not that "everything Sheriff Bianco does or says is 'official county policy.'" AB 38. It is that the Sheriff is the County's final policymaker for the investigation of crime and the conduct of arrests, *Brewster v. Shasta County*, 275 F.3d 803, 807–08 (9th Cir. 2001), and that a deliberate, months-long course of official public communication by that policymaker about his own department's operation is "a deliberate choice to follow a course of action . . . made from among various alternatives by the official . . . responsible for establishing final policy with respect to the subject matter in question." *Pembaur*, 475 U.S. at 483.

Second, on ratification, Appellees are right that the Sheriff cannot ratify his own statements, AB 39, and Miller does not argue otherwise. Paragraph 66 pleads ratification of the deputies' search and detention. ER-96. The Sheriff's public statements are the evidence of it: this Court held in *Larez v. City of Los Angeles* that a police chief's public statements about his officers' conduct, made as the final policymaker on police matters, are evidence of the department's policy and of ratification, and that evidence that the chief "ratified a decision that deprived plaintiffs of their constitutional rights would suffice for official liability." 946 F.2d 630, 646 (9th Cir. 1991). Appellees' response, that it cannot be inferred the Sheriff "knew the deputies' post-arrest activities were unconstitutional," AB 40, is a merits argument about what the Sheriff knew, not a pleading argument about what the SAC alleges.

Third, on failure to train, Appellees argue that in-custody deaths, excessive force, and a state civil-rights investigation of the County's jails are "too attenuated" from Miller's claims. AB 43. The only pattern analysis in this record is the FAC order's, and it was expressly limited to the First Amendment: "Here, none of the alleged prior incidents involve violations of the First Amendment right." ER-70.

That was correct for a pleading that asserted only a First Amendment claim. The SAC added custodial claims, ER-95 to 97, ER-102 to 104, and the January order never redid the analysis. Against a claim of deliberate indifference to a detainee's medical needs, a pattern of in-custody deaths and a state investigation into jail conditions is the kind of pattern *City of Canton v. Harris*, 489 U.S. 378, 390 (1989), and *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007), describe. Miller does not press the failure-to-train theory as to the First Amendment claim.

## V. FAILURE TO INTERVENE

The failure-to-intervene dismissal was likewise derivative. ER-257. Appellees add that the claim does not lie against the County on a respondeat superior theory, AB 45, and Miller does not contest that point. But the order dismissed the claim against "Doe Defendants 1 through 100" as well, with prejudice, on a purely derivative rationale, before any Doe was identified. ER-257. That dismissal was error on its own terms. Where "the identity of alleged defendants will not be known prior to the filing of a complaint," the plaintiff "should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). The "other grounds" exception requires the court to analyze the claim against the Does themselves, and this Court reversed a with-prejudice dismissal of a Doe defendant where the district court had supplied no such analysis. *Wakefield v. Thompson*, 177 F.3d 1160, 1162–63 (9th Cir. 1999); accord *Crowley v. Bannister*, 734 F.3d 967, 978 (9th Cir. 2013). The SAC pleads that the Does' true names are "presently unknown to Plaintiff," ER-77 (¶ 15), they are by the SAC's allegations the County's own deputies, and the order made no finding that discovery would fail to reveal them. If a predicate violation is reinstated, the Doe dismissal falls with it, and the question of

who was present and who had a realistic opportunity to intercede is one for the amended pleading discussed in Part VII.

## VI. BAIRD IS PRESERVED; PREISER IS INAPPOSITE; AND THERE IS NO CONVICTION

Appellees answer Miller's *Baird* argument with *Preiser v. Rodriguez*, for the proposition that "a § 1983 action is not the appropriate vehicle for a criminal defendant to contest the charges against him." AB 48. *Preiser* holds that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." 411 U.S. 475, 500 (1973). It expressly excludes damages actions: "If a state prisoner is seeking damages, he is attacking something other than the fact or length of his confinement . . . . In the case of a damages claim, habeas corpus is not an appropriate or available federal remedy." *Id.* at 494. Miller seeks damages.

The doctrine Appellees presumably mean is *Heck v. Humphrey*, which they do not cite. *Heck* bars a § 1983 damages claim only where "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence" and the conviction "has not been so invalidated"; where the action "will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed." 512 U.S. 477, 486–87 (1994). There is no conviction and no outstanding criminal judgment, and nothing in the Answering Brief asserts one. The criminal complaint charged one misdemeanor count under Penal Code § 25850 and one infraction under Vehicle Code § 4000(a)(1), ER-68 n.4; both briefs have described the charges by reference to SAC ¶ 39, which recites the citation rather than the complaint. The charges were dismissed on July 31, 2026, after Miller completed misdemeanor diversion under Penal Code § 1001.95, and the

arrest record was ordered sealed. See Part VII.D, below. This Court has held that *Heck* "requires an actual judgment of conviction, not its functional equivalent," and does not apply where charges are dismissed after a plea held in abeyance pending the defendant's compliance with conditions, a result it described as consistent with the circuits that have declined to apply Heck to completed pretrial diversion agreements. *Duarte v. City of Stockton*, 60 F.4th 566, 571-72 (9th Cir. 2023); *see also Hollamon v. City of Los Angeles*, 709 F. Supp. 3d 992, 999 (C.D. Cal. 2023), *aff'd*, 2025 U.S. App. LEXIS 7312 (9th Cir. Mar. 27, 2025); see *Wallace v. Kato*, 549 U.S. 384, 393 (2007); *Roberts v. City of Fairbanks*, 947 F.3d 1191, 1198 (9th Cir. 2020). Section 1001.95 diversion requires no plea and no admission, Cal. Penal Code § 1001.3, and a prosecution that "ended without a conviction" is a favorable termination. *Thompson v. Clark*, 596 U.S. 36, 39 (2022). *Heck* has nothing to bar.

As to *Baird v. Bonta*, 163 F.4th 723 (9th Cir. 2026), Miller's point remains the one his opening brief made, OB 35 to 36, and he preserves it.

## VII. THE DENIAL OF LEAVE TO AMEND RESTED ON A RULE RATHER THAN A FINDING, MILLER FOLLOWED THE COURT'S INSTRUCTIONS, AND HE CAN NOW SAY WHAT HE WOULD PLEAD

### A. The holding as written.

The district court's futility analysis, in full:

> Here, because Plaintiff already had an opportunity to amend, further opportunity to amend would be futile. See *Conso v. City of Eureka*, No. 21-CV-04480-RMI, 2022 WL 409958, at *8 (N.D. Cal. Feb. 10, 2022) (finding amendment to plaintiff's First Amendment retaliation claim would be futile given plaintiff had already had an opportunity to amend). Moreover, to the extent Plaintiff now seeks to bring a new claim for a violation of his Fourth Amendment rights, leave to amend would be futile because Plaintiff incorporates evidence that clearly establishes probable cause for the search and seizure. Accordingly, Causes of Action One, Two, Three, and Four are DISMISSED WITHOUT LEAVE TO AMEND.

ER-257. The first sentence is a rule: one prior amendment, therefore futility. The standard the order recites a paragraph earlier permits dismissal without leave where "'allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency,' or if the plaintiff had several opportunities to amend its complaint and repeatedly failed to cure deficiencies." ER-257 (quoting *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010)). The order found neither. It identified no deficiency that other facts could not cure, and it said "an opportunity," singular. Five months earlier, applying the same *Telesaurus* standard to the FAC, the same court held: "the Court cannot conclude amendment would be futile because it is possible 'allegation of other facts consistent with the challenged pleading could . . . cure the deficiency.'" ER-72. Nothing in the January order explains what changed, other than that an amendment had occurred.

The third sentence calls the Fourth Amendment claim one Plaintiff "now seeks to bring" as "a new claim." The First Cause of Action is captioned as a Fourth Amendment claim. ER-93. And the one specific futility finding, that incorporated evidence "clearly establishes probable cause for the search and seizure," addresses probable cause. It says nothing about the scope of the search, its duration, the medical-care allegations, the x-ray, or § 851.5, none of which the audio recording touches. A court cannot find amendment futile as to claims it expressly declined to examine. ER-254 n.2.

### B. Miller followed the district court's instructions.

Appellees tell this Court that Miller had "the benefit of the district court's 'detailed instructions' . . . 'as to what [he] needed to do to fix the problems with [his] complaint,'" and that "[h]e did not follow that guidance." AB 47 (quoting *Destfino*, 630 F.3d 952, 959 (9th Cir. 2011)). The instructions were given in five footnotes of the FAC order. Compare each to the SAC.

Footnote 3 said that the theory based on the Sheriff's post-arrest public statements was "a new legal theory not alleged in the FAC" that the court "cannot consider." ER-67 n.3. The SAC pleads it as the Second Cause of Action. ER-98 to 101. Footnote 5 said the court "will not attempt to cobble together alleged facts to support an unidentified cause of action," noting that the *Monell* claim "seems to be based upon other alleged constitutional violations, e.g., Eighth Amendment deliberate indifference to medical care." ER-70 n.5. The SAC pleads the custodial claim under its own heading, by provision, theory, and fact. ER-95 to 96 (¶ 65). Footnote 6 said ratification and custom were "new legal theories not alleged in the FAC." ER-71 n.6. The SAC pleads ratification at ¶ 66 and ¶ 86. ER-96, ER-101. Footnote 7 said the failure-to-intervene allegations did not identify "who failed to intervene, how, or whether anyone had the opportunity to intercede." ER-71 to 72 n.7. The SAC names Deputy Coronado and pleads three intervention contexts. ER-103 (¶ 90(c)); ER-114 to 115. Footnote 8 said amended allegations "must not be inconsistent with those already alleged." ER-72 n.8. The SAC's ¶ 28, alleging that the firearms were not "loaded," was disregarded as inconsistent with the incorporated recording, ER-254, and Miller does not defend it here.

Four of five. *Destfino* involved a plaintiff who, after "three bites at the apple," continued "to make 'everyone did everything' allegations" in defiance of orders to say "which of the defendants made which of the fraudulent statements," and the Court held that the plaintiffs "failed to comply with these orders." 630 F.3d at 958–59. That is not this record. And *Gibson*, on which Appellees rely throughout, reversed a with-prejudice dismissal of a pleading far worse than this one, holding that "when district courts identify shotgun pleadings, they should not hesitate to afford such parties one last opportunity to make themselves understood." 165 F.4th at 1290; see *id.* at 1295 to 96. *Gibson* also approved a complaint that "incorporated

by reference specific paragraphs of facts into specific claims for relief," *id.* at 1293, which is what SAC ¶ 57 does. ER-93.

### C. Futility cannot reach what the court declined to examine.

This Court sitting en banc reversed a dismissal without leave to amend where "neither the magistrate judge nor the district court found that the pleading could not be cured by the allegation of other facts," because such a dismissal is "contrary to our longstanding rule that 'leave to amend should be granted if it appears at all possible that the plaintiff can correct the defect.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc). "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment," and a court's "failure to consider the relevant factors and articulate why dismissal should be with prejudice instead of without prejudice may constitute an abuse of discretion." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam); accord *Lawyers for Fair Reciprocal Admission v. United States*, 141 F.4th 1056, 1074 (9th Cir. 2025). The absence of a finding is the defect here. The only finding made concerns probable cause, and it does not reach ¶¶ 62 to 65. The Supreme Court has recently reaffirmed that "Rule 8 sets a ceiling on the information that plaintiffs can be required to provide about the merits of their claims." *Berk v. Choy*, 607 U.S. 187, 195 (2026) (discussing *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993)). A pleading that identifies the claim, the theory, and the events cannot be dismissed with prejudice on the ground that the court declined to read it.

### D. Miller can now state what a Third Amended Complaint would allege.

Appellees' strongest point is that Miller has not "suggested that there are additional facts he could or would plead." AB 48 (citing *Barke v. Banks*, 25 F.4th 714, 721 (9th Cir. 2022) (per curiam); *G.B. ex rel. G.P. v. EPA*, 172 F.4th 1042, 1065 (9th Cir. 2026)). In *Barke*, the district court "gave Plaintiffs an opportunity to state what additional details they would add" and they "did not do so," and they did not identify any on appeal. 25 F.4th at 721. In *G.B.*, the district court had warned that the first repleading opportunity "would be their last," found "structural" futility, and the plaintiffs "did not . . . identify any new allegations they could plead." 172 F.4th at 1065. Both decisions turn on the absence of a proffer. Here is Miller's.

A Third Amended Complaint would allege: (1) that the criminal charges arising from the October 12, 2024 stop were dismissed on July 31, 2026, after Miller successfully completed misdemeanor diversion under Penal Code § 1001.95, granted over the People's opposition, and that the arrest record was ordered sealed under Penal Code § 851.91, so that no conviction exists or can exist;[2] (2) the identities of the deputies present at the scene and during Miller's transport and booking, including, as the People's own filing in the criminal case describes them, the corporal who made initial contact, the sergeant who ordered Miller from his vehicle and handcuffed him, the investigator and deputy who searched the vehicle and its contents, and Deputy Coronado, badge 5731, who took custody, administered

---

[2] Miller is concurrently moving for judicial notice of the Riverside County Superior Court's July 31, 2026 minute order and order to seal in *People v. Miller*, No. INM2407181, solely in support of this leave-to-amend argument. Fed. R. Evid. 201. The sealed records are disclosed at Miller's own direction, as Penal Code § 851.92(b)(5) permits. Appellees' footnote 1 offered a post-judgment state ruling on the merits, which Rule 12 review does not permit; the question on leave to amend is what Miller could plead now.

*Miranda* warnings, announced the arrest, and transported Miller, with the acts each performed;[3] (3) that during the search deputies removed Miller's laptop computer and external hard drives from their cases and opened the laptop, and that whether data on those devices was accessed is not presently known to Miller; and (4) the custodial facts already pleaded in ¶¶ 65, 70, and 71, with the sequence of events at the scene stated as a sequence. These allegations are consistent with the operative pleading. They are the facts the district court's August 2025 order said were missing from the failure-to-intervene count, ER-71 to 72 n.7, and they are the facts Appellees say Miller never offered.

## VIII. QUALIFIED IMMUNITY IS NOT BEFORE THIS COURT

Appellees state that "[n]either Defendants nor the district court introduced the issue of qualified immunity in the proceedings below" and that it "was not a basis for the district court's dismissal." AB 46. Miller agrees. The consequence is that qualified immunity cannot serve as an alternative ground for affirmance, and Miller preserves his position on the defense for remand.

[3]Naming the deputies is not untimely. The limitations period for a claim against a California peace officer or his employing entity arising from the charged offense is tolled while the charges are pending, Cal. Gov't Code § 945.3, and this Court applies that provision to § 1983 claims. *Harding v. Galceran*, 889 F.2d 906, 907–08 (9th Cir. 1989); *Torres v. City of Santa Ana*, 108 F.3d 224, 226–27 (9th Cir. 1997); *Lockett v. County of Los Angeles*, 977 F.3d 737, 740–42 (9th Cir. 2020) (*Monell* claim against employing county). The charges were pending from the filing of the misdemeanor complaint, ER-68 n.4 (Dkt. 31-1), until July 31, 2026, and § 1001.95 diversion is not among the programs § 945.3 excludes. Independently, the SAC pleads that the Does' true names are "presently unknown to Plaintiff," ER-77 (¶ 15), so an amendment naming them relates back under Cal. Code Civ. Proc. § 474, which Rule 15(c)(1)(A) incorporates. *Butler v. National Community Renaissance of California*, 766 F.3d 1191, 1200–01 (9th Cir. 2014); *Merritt v. County of Los Angeles*, 875 F.2d 765, 768 (9th Cir. 1989).

## CONCLUSION

The order under review decided probable cause for an arrest and treated that decision as an answer to four claims. It did not address the scope or duration of the search, the custodial conditions pleaded in ¶ 65, the circumstantial allegations of retaliatory motive in ¶ 81, or the alternative *Monell* theories, and it denied leave to amend on the fact of a prior amendment rather than on any finding of incurability. This Court should vacate the judgment and remand with instructions to grant leave to file a Third Amended Complaint. In the alternative, it should reverse the dismissal of Causes of Action One through Four and remand for further proceedings.

Dated: October 30, 2026

Respectfully submitted,

**ETHAN BEARMAN, ESQ. (SBN 327490)**
THE BEARMAN FIRM, INC.
9460 Wilshire Blvd., Suite 830
Beverly Hills, CA 90212
(747) 232-7626
ethan@thebearmanfirm.com
*Attorney for Plaintiff-Appellant Vem Miller*

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, counsel is not aware of any related cases pending in this Court. Miller's appeal from the Riverside County Superior Court's order granting Appellees' special motion to strike is pending in the California Court of Appeal, Fourth Appellate District, Case No. E088791.

# CERTIFICATE OF COMPLIANCE

Form 8. Certificate of Compliance for Briefs

9th Cir. Case Number: 26-226

I am the attorney or self-represented party.

This brief contains 6,988 words, including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief complies with the word limit of Cir. R. 32-1.

Signature: /s/ Ethan Bearman

Date: October 30, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2026, I electronically filed the foregoing APPELLANT'S REPLY BRIEF with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Case Management System (ACMS). Participants in the case who are registered ACMS users will be served by ACMS.

/s/ Ethan Bearman
Ethan Bearman (SBN 327490)
Attorney for Plaintiff-Appellant Vem Miller